*E-FILED - 3/23/11*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN LOPEZ, | No. C 08-2489 RMW (PR) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |
| vs. | |
| EDMUND G. BROWN, | |
| Respondent. | |

Petitioner, a state prisoner proceeding pro se, sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On December 8, 2009, this court granted respondent's motion to dismiss because the petition contained both exhausted and unexhausted claims. The court dismissed three of the four claims presented in petitioner's petition as unexhausted. Respondent was then ordered to show cause why the writ should not be granted. Respondent answered the order, discussing the sole exhausted claim. Petitioner filed a traverse. For the reasons set forth below, the petition for a writ of habeas corpus is DENIED.

**PROCEDURAL BACKGROUND**

On August 31, 2005, a jury found petitioner guilty of driving with willful and wanton disregard for the safety of persons and property while fleeing a peace officer, in violation of California Vehicle Code §§ 2800.1 and 2800.2(a). Petitioner admitted four strike priors and three prior prison terms. On December 23, 2005, the court sentenced petitioner to a term of 25

1 years to life.  Petitioner filed unsuccessful appeals to the California Court of Appeal and the
2 California Supreme Court.  Petitioner filed the instant federal petition on May 15, 2008.

## FACTUAL BACKGROUND[1]

On January 13, 2005, at 2:00 a.m., San Jose police officer Jeffrey Rickel was parked in his patrol car on the first level of the Third Street garage.  (Op. at 2.)  Petitioner drove toward Rickel in a gray Ford Mustang, turned slowly around the corner, and bumped his bumper into a support pillar.  (Id. at 3.)  Rickel got out of the car and walked over to petitioner's car and noticed that petitioner's eyes were red and watery .  (Id.)  Rickel believed petitioner was too drunk to be driving, so told him to stop where he was.  (Id.)  He told petitioner to pull into a parking stall, and indicated which one he wanted petitioner to park in.  (Id.)  Petitioner began to pull into the stall but then accelerated to the garage exit.  (Id.)  Rickel yelled for petitioner to stop, then ran to his patrol car, started it, and turned on his lights and siren before following petitioner.  (Id.)

Petitioner drove through the garage entrance rather than exit, and headed south on Third Street, a one-way northbound street, and accelerated quickly.  (Id.)  At Third Street and Santa Clara Street, petitioner slowed and then turned onto Santa Clara Street.  (Id. at 4.)  Petitioner drove through several red lights at approximately 50 miles per hour.  (Id.)  By the time petitioner got to 12th Street, Rickel lost sight of him, so he put out a broadcast with descriptions of petitioner and petitioner's car.  (Id.)  Soon, Officer Richard Bravo called to say that he had petitioner detained, and gave Rickel the address.  (Id.)

Bravo stated that he waited at 26th Street when he saw the speeding Mustang.  (Id.)  The Mustang passed Bravo going between 40 and 50 miles per hour until it turned onto 26th Street.  (Id.)  After the Mustang turned onto Whitton, it started to slow down.  (Id.)  The passenger door opened, and the passenger fled.  (Id.)  After passing a few houses, the Mustang came to a stop.  (Id. at 5.)  Bravo approached the Mustang and ordered petitioner out of the car.  (Id.)  Petitioner

---

[1] The relevant facts are taken from California Court of Appeal's opinion.  (Resp., Ex. C, People v. Lopez, H029724, Feb. 27, 2007 ("Op.").)

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.08\Lopez489denhc.wpd        2

did not comply. (Id.) Bravo finally pulled petitioner out of the car, and petitioner fell on his face. (Id.) Bravo noted that petitioner's speech was slurred, and he smelled alcohol. (Id.) Petitioner's blood was taken at the police station, where his blood alcohol level registered at 0.30. (Id.) It was stipulated at trial that petitioner's driver's license had been revoked since October 31, 1990. (Id.)

## DISCUSSION

### A.   Standard of Review

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes significant restrictions on the scope of federal habeas corpus proceedings. Under the AEDPA, a federal court may not grant habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively

1  unreasonable, the inquiry may require analysis of the state court's method as well as its result.
2  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).  The "objectively unreasonable"
3  standard does not equate to "clear error" because "[t]hese two standards . . . are not the same.
4  The gloss of clear error fails to give proper deference to state courts by conflating error (even
5  clear error) with unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Here, that decision is from the California Court of Appeal.

**B.    Analysis**

Petitioner asserts that CALJIC 12.85[2] contained an unconstitutional mandatory presumption, in violation of his right to due process.  Specifically, he argues that the jury instruction unconstitutionally allowed the element of "willful or wanton disregard for the safety of persons" to be satisfied by the commission of three or more vehicle code violations, no matter how minor. (Petition at 8.)  In his traverse, petitioner appears to modify his claim to include the argument that the corresponding statute, California Vehicle Code § 2800.2,[3] contains an unconstitutional mandatory presumption.  (Traverse at 2.)  He asserts that the vehicle code violations must be charged in order for them to be considered.  (Id.)

---

[2] CALJIC 12.85 defines the offense of reckless driving while attempting to elude a pursuing peace offer under section 2800.2.  CALJIC 12.85 provides, "A willful or wanton disregard for the safety of persons or property also include, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time the person driving commits three or more Vehicle Code violations, such as Vehicle Code section 21657, driving the wrong way on a street, Vehicle Code Section 22350, speeding, Vehicle Code Section 22100(b), illegal left turn and Vehicle Code Section 21453(a), running a red light."

[3] Section 2800.2(b) provides, "For purposes of this section, a willful and wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three of more violations that are assigned a traffic violation point under Section 12810 occur, or damage to property occurs."

The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every element of the charged offense. In re Winship, 397 U.S. 358, 364 (1970). The threshold question with respect to a presumption is whether it is mandatory. Carella v. California, 491 U.S. 263, 265 (1989). A presumption is mandatory if it "require[s] [the jurors] to find the presumed fact if the State proves certain predicate facts." Id. (finding improper mandatory presumption where jury was instructed that "intent to commit theft by fraud is presumed" from failure to return rented property within twenty days of demand).

The California Court of Appeal rejected this claim. (Op. at 19-20.) The Court acknowledged that other California appellate courts have previously rejected this same argument, and concluded that section 2800.2(b) "establishes a rule of substantive law rather than a presumption," and that "evasive driving during which the defendant commits three or more specified traffic violations *is* a violation of section 2800.2 '*because of the substantive statutory definition of the crime*' rather than because of any presumption." (Emphasis in original.) (Op. at 19.)

A state court's interpretation and analysis of a state statute may not be challenged in a federal habeas corpus action. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a court sitting in habeas corpus."). The Supreme Court has acknowledged that such state court determinations are afforded great deference. "If a State's courts have determined that certain statutory alternatives are mere means of committing a single offense . . . we simply are not at liberty to ignore that determination." Schad v. Arizona, 501 U.S. 624, 636-37 (1991) (discussing Arizona's first degree murder statute and stating that Arizona "has effectively decided that, under state law, premeditation and the commission of a felony are not independent elements of the crime, but rather are mere means of satisfying a single mens rea element.").

1       With that in mind, this court concludes that neither CALJIC 12.85 nor subdivision (b) of
2 section 2800.2 creates an evidentiary presumption; rather, they are substantive definitions
3 which provide that the commission of three traffic "point" violations is one method of proving a
4 vehicle was driven with a willful or wanton disregard for the safety of persons or property.
5 Here, as a matter of state law, subdivision (b) is an alternative definition or description of a
6 mens rea element, rather than a presumption. See People v. Pinkston, 112 Cal. App. 4th 387,
7 392-93 (2003) (concluding that section 2800.2(b) does not state a mandatory presumption, but
8 rather, "establishes a rule of substantive law"); People v. Sewell, 80 Cal. App. 4th 690, 694-95
9 (2000) (finding that subdivision (b) "merely described a couple of nonexclusive acts that
10 constitute driving with willful or wanton disregard").

11       Accordingly, the state court's decision to reject this claim was neither contrary to nor an
12 unreasonable application of clearly established federal law, nor was it an unreasonable
13 determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1), (2).

## CONCLUSION

15       The petition for a writ of habeas corpus is DENIED.

16       The federal rules governing habeas cases brought by state prisoners require a district
17 court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its
18 ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective
19 December 1, 2009). For the reasons set out in the discussion above, petitioner has not shown
20 "that jurists of reason would find it debatable whether the petition states a valid claim of the
21 denial of a constitutional right [or] that jurists of reason would find it debatable whether the
22 district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484
23 (2000). Accordingly, a COA is DENIED.

24       The clerk shall enter judgment and close the file.

25       IT IS SO ORDERED.

26 DATED: 3/22/11

*/s/ Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\pro-se\sj.rmw\cr.08\Anguiano645dwlta       6